Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANN WILCOXON,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>TELLURIAN, INC., MARTIN HOUSTON, DILLON J. FERGUSON, DIANA DERYCZ-KESSLER, DON TURKLESON, JONATHAN GROSS, and JEAN ABITEBOUL,<br><br>　　　　　　　Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Ann Wilcoxon ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1. Plaintiff brings this stockholder action against Tellurian, Inc. ("Tellurian" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to subsidiaries of Woodside Energy Group Ltd. ("Woodside"), as a result of

an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a July 22, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the Definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the deal, Woodside will acquire Tellurian for $1.00 per share in cash at closing. The implied total enterprise value of the transaction, including net debt, is approximately $1.2 billion.

3. On August 16, 2024, the Company filed its Preliminary Proxy Statement on Schedule PREM14A with the United States Securities and Exchange Commission (the "SEC"). Thereafter, on August 27, 2024, the Company filed its Definitive Proxy Statement on Schedule DEFM14A with the SEC (together, the "Proxy Statement").

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5. The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Tellurian, provided by the Company to the Company's financial advisor, Lazard

Frères & Co. LLC ("Lazard"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Lazard, and provided to the Board.

6.  Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.  Plaintiff is a citizen of Colorado and, at all times relevant hereto, has been a Tellurian stockholder.

8.  Defendant Tellurian engages in the natural gas business worldwide. Tellurian is incorporated under the laws of the State of Delaware and has its principal place of business at 1201 Louisiana Street, Suite 3100, Houston, TX 77002. Shares of Tellurian common stock are traded on the New York Stock Exchange (the "NYSE") under the symbol "TELL."

9.  Defendant Martin Houston ("Houston") has been the Chair of the Board of Directors of the Company at all relevant times.

10. Defendant Dillon J. Ferguson ("Ferguson") has been a director of the Company at all relevant times.

11. Defendant Diana Derycz-Kessler ("Derycz-Kessler") has been a director of the Company at all relevant times.

12. Defendant Don Turkleson ("Turkleson") has been a director of the Company at all relevant times.

13. Defendant Jean Abiteboul ("Abiteboul") has been a director of the Company at all relevant times.

14. Defendants identified in ¶¶ 9-13 are collectively referred to as the "Individual Defendants."

15. Non-Party Woodside Energy Group Ltd. engages in the exploration, evaluation, development, production, and marketing of hydrocarbons in the Asia Pacific, Africa, the Americas, and the Europe.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

17. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

19. Defendant Tellurian operates as a digital healthcare platform company. Its Tellurian platform connects people, patients, providers, employers, health plans, government organizations, and communities that optimize individual and population-wide well-being.

*The Flawed Sales Process*

20. As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed to effectuate a sale of the Company to Woodside.

21. In addition, the Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Woodside, and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

22. The Proxy Statement fails to disclose the totality of communications regarding post-transaction employment during the negotiation of the underlying transaction.

23. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

24. On July 21, 2024, Tellurian and Woodside issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> HOUSTON--(BUSINESS WIRE)-- Tellurian Inc. ("Tellurian") (NYSE American: TELL) today announced that it has entered into a definitive agreement with subsidiaries of Woodside Energy Group Ltd ("Woodside") (ASX: WDS) pursuant to which Woodside will acquire all the outstanding shares of Tellurian for $1.00 per share in an all-cash transaction.

"This transaction provides substantial and certain value for our shareholders. Following our strategic repositioning in December, our new leadership has strengthened Tellurian's position and advanced Driftwood LNG. Woodside's offer reflects this progress, providing a significant premium to our share price," said Martin Houston, Executive Chairman, Tellurian Board of Directors. "After careful consideration of Tellurian's opportunities and challenges, the Board and senior management weighed an immediate and significant cash return against the risks and costs associated with the timeline to FID and determined that this offer is in our shareholders' best interest. Woodside is a highly credible operator, with better access to financial resources and a greater ability to manage offtake risk, and I am confident it is the right developer to take Driftwood forward."

The acquisition price represents a 75% premium to Tellurian's closing price on July 19, 2024, and a 48% premium to Tellurian's 30-day volume weighted average price, which reflect Driftwood LNG's premier site, fully permitted status, advanced stage of pre-FID development and strong relationships with Bechtel, Baker Hughes, and Chart. The implied total enterprise value of the transaction, including net debt, is approximately $1.2 billion. The transaction, which was unanimously approved by both boards of directors, is expected to close in Q4 2024, subject to customary closing conditions, including approval from Tellurian shareholders and the receipt of regulatory approvals.

*Potential Conflicts of Interest*

25.     The breakdown of the benefits of the deal indicates that Tellurian insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Tellurian.

26.     In addition, Company insiders currently own large illiquid blocks of company shares, Company options, Company Restricted Stock, Company RSUs, and Company Tracking Units, all of which will be converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name | Shares of Company Common Stock (#) | Company Options (#) | Company Restricted Stock (#) | Company RSUs (#) | Company Tracking Units (#) | Value ($) |
|---|---|---|---|---|---|---|

| | | | | | | |
|---|---|---|---|---|---|---|
| *Executive Officers:* | | | | | | |
| Daniel A. Belhumeur | 164,742 | 80,000 | 1,170,000 | — | 178,582 | $ 1,513,324 |
| Octávio M.C. Simões(1) | 206,678 | — | 2,000,000 | — | — | $ 2,206,678 |
| Samik Mukherjee | — | — | — | 500,000 | 280,000 | $ 780,000 |
| Simon G. Oxley | 144,634 | — | 200,000 | 200,000 | — | $ 544,634 |
| L. Kian Granmayeh(1) | 7,561 | — | — | — | — | $ 7,561 |
| Khaled A. Sharafeldin | 243,383 | 58,000 | 526,500 | — | 104,762 | $ 874,645 |
| Charif Souki(1) | 1,659,639 | — | — | — | 892,857 | $ 2,552,496 |
| *Directors:* | | | | | | |
| Martin J. Houston | 17,157,397 | — | — | — | — | $17,157,397 |
| Jean P. Abiteboul | 1,164,636 | — | — | — | — | $ 1,164,636 |
| Diana Derycz-Kessler | 1,335,248 | — | — | — | — | $ 1,335,248 |
| Dillon J. Ferguson | 439,281 | — | — | — | — | $ 439,281 |
| Jonathan S. Gross | 609,559 | — | — | — | — | $ 609,559 |
| Don A. Turkleson | 421,035 | — | — | — | — | $ 421,035 |

27. In addition, employment agreements with certain Tellurian executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff. The golden parachute compensation is as follows:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Tax Reimbursement ($)(4) | Other ($)(5) | Total ($) |
|---|---|---|---|---|---|---|
| Daniel A. Belhumeur | 1,870,000 | 1,170,000 | 89,459 | 208,333 | 4,678,582 | $8,016,374 |

| Octávio M.C. Simões | — | 2,000,000 | — | — | — | $2,000,000 |
| Simon G. Oxley | 1,050,000 | 400,000 | 89,459 | 208,333 | 3,600,000 | $5,347,792 |
| L. Kian Granmayeh | — | — | — | — | — | — |
| Khaled A. Sharafeldin | 1,155,000 | 526,500 | 89,459 | — | 1,685,762 | $3,160,082 |
| Charif Souki | — | — | — | — | — | — |

28.  The Proxy Statement also fails to disclose the totality of communications regarding post-transaction employment during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

29.  This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

30.  Thus, while the Proposed Transaction is not in the best interests of Tellurian, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Proxy Statement*

31.  The Tellurian Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

32. The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy Statement fails to disclose:

   a. Whether the confidentiality agreements entered into by the Company with Woodside differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

   b. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Woodside, would fall away; and

   c. The totality of communications regarding post-transaction employment during the negotiation of the underlying transaction.

33. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Tellurian's Financial Projections*

34. The Proxy Statement fails to provide material information concerning financial projections for Tellurian provided by Tellurian management to the Board and Lazard, and relied

upon by Lazard in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

35. Notably the Proxy Statement reveals that as part of its analyses, Lazard reviewed, "various financial forecasts and other data provided to Lazard by the Company relating to the business of the Company."

36. Therefore, the Proxy Statement should have, but fails to provide, certain information in the projections that Tellurian management provided to the Board and Lazard. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

37. With regard to the *Summary of the Financial Projections* provided by Tellurian Management, the Proxy Statement fails to disclose material line items for the following metrics:

    a. Phase 1 Net Revenue, including all underlying inputs, metrics, and assumptions used to calculate same;

    b. Phases 2 – 4 Net Revenue, including all underlying inputs, metrics, and assumptions used to calculate same;

    c. Total Project Net Revenue, including all underlying inputs, metrics, and assumptions used to calculate same;

    d. Phase 1 EBITDA, including all underlying inputs, metrics, and assumptions used to calculate same;

e. Phases 2 – 4 EBITDA, including all underlying inputs, metrics, and assumptions used to calculate same;

f. Total Project EBITDA, including all underlying inputs, metrics, and assumptions used to calculate same;

g. Phase 1 Capital Expenditures, including all underlying inputs, metrics, and assumptions used to calculate same;

h. Phase 2 – 4 Capital Expenditures, including all underlying inputs, metrics, and assumptions used to calculate same;

i. Total Project Capital Expenditures, including all underlying inputs, metrics, and assumptions used to calculate same;

j. Phase 1 Levered Free Cash Flow, including all underlying inputs, metrics, and assumptions used to calculate same;

k. Phases 2 – 4 Levered Free Cash Flow, including all underlying inputs, metrics, and assumptions used to calculate same;

l. Total Project Levered Free Cash Flow, including all underlying inputs, metrics, and assumptions used to calculate same; and

m. Corporate Expenses (Unlevered), including all underlying inputs, metrics, and assumptions used to calculate same.

38. The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

39. This information is necessary to provide Plaintiff in her capacity as a Company stockholder with a complete and accurate picture of the sales process and its fairness. Without this

information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

40. Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Lazard's financial analysis, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Lazard*

41. In the Proxy Statement, Lazard describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinion.

42. With respect to the *Useful Life Levered Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose:

    a. The inputs, metrics, and assumptions used to determine discount rate range of 16.0% to 19.0% utilized; and

    b. The Company's weighted average cost of capital utilized.

43. With respect to the *Analyst Price Targets Analysis,* the Proxy Statement fails to disclose:

    a. The specific price targets analyzed; and

    b. The specific Wall Street firms that generated the analyzed price targets.

44. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

45. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the Proposed Transaction truly maximizes her value and serves her interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Tellurian stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

46. Plaintiff repeats all previous allegations as if set forth in full herein.

47. Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

48. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or

consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

49. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

50. The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

51. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

52. The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

53. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in

favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

54. Plaintiff repeats all previous allegations as if set forth in full herein.

55. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

56. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement; and nevertheless, approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

57. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Tellurian's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

58. The Individual Defendants acted as controlling persons of Tellurian within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Tellurian to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Tellurian and all of its employees. As alleged above, Tellurian is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein

not misleading;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: August 29, 2024    **BRODSKY & SMITH**

By: *Evan J. Smith*
Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*